May it please the Court, my name is David Schlesinger. I represent the petitioner Norberto Salazar-Luviano. The principal issue that Mr. Salazar-Luviano presents in his petition for review is whether the Board of Immigration Appeals erred as a matter of law in concluding that Mr. Salazar-Luviano's 1987 federal conviction for aiding and abetting an escape violation of 18 U.S.C. sections 2 and 751 constituted an offense relating to an obstruction of justice under 8 U.S. That's the whole issue, isn't it, whether it constitutes an obstruction of justice? That is the entire issue, Your Honor. And we submit that And if it's not, whether he's eligible under either 212C or 240, right? That's correct, Your Honor. Although we would acknowledge, as we set forth in my second 20HA letter, that this Court's decision in Becker in 2007 would seem to foreclose our arguments on the 212C issue, although we would like to preserve that issue in the eventuality of potential en banc review or if we need to file a writ with it. And hasn't the BIA itself said that the parallel offense is the federal obstruction statute? I'm sorry. Can you repeat the question? Hasn't the BIA itself ruled that an offense of this type, in order to qualify as an aggravated felony, has to meet the elements of the federal obstruction of justice statute? That's entirely correct, Your Honor. Which includes an element for interfering with an existing judicial proceeding. Is that right? That's correct, Your Honor. So our position is that whether you apply a categorical analysis under Taylor or whether you even have to go to a modified categorical, if for some reason the Court were to conclude that the statute is divisible, that there's nothing in the record indicating that Mr. Sells or Loviano or the conviction documents or even the statute itself under a categorical analysis would suffice under the BIA's decision and Espinosa-Gonzalez's principles later incorporated by this Court in its recent decision. What do the documents that we can take notice of show as far as this particular offense is concerned? Yes, Your Honor. There is a copy of an information filed in this case and a copy of a judgment conviction. The judgment of conviction appears in AR 297. The judgment of conviction says that Mr. Sells or Loviano aided and abetted or at least attempted to aid and abet an escape from the custody of a Border Patrol agent. There were certain undocumented aliens in the custody of a Border Patrol agent, and Mr. Sells or Loviano admitted that he tried to escape them from custody. However, as Judge Hawkins alluded to in talking about the threshold requirements for proving an obstruction of justice for aggravated felony purposes, there wasn't an ongoing judicial proceeding at that time, and that, as the BIA acknowledged, in Espinosa-Gonzalez incorporating principles from the Supreme Court in Aguilar. Did you say there wasn't a proceeding or there's no showing that there was? There is certainly no showing, Your Honor, that there was an ongoing judicial proceeding. The conviction documents only show that Mr. Sells or Loviano had been arrested for the offense of aiding and abetting an escape. But there is no showing whatsoever that judicial process actually attached in the case, as is required under Aguilar, as Judge Hawkins noted. The BIA in Espinosa-Gonzalez has explicitly incorporated the principles set forth by the Supreme Court in Aguilar under 18 U.S.C. 1503. 18-1503? That's correct, Your Honor. Under that case, as the Supreme Court noted, there needed to be an ongoing judicial proceeding or investigation before the – before one could even inquire as to whether justice was actually obstructed. And Justice Scalia, in his dissent in that case in footnote 1, explicitly noted under the Supreme Court's earlier decision of Pettibone that there explicitly has to be an ongoing proceeding. Now, the government in its opposition has noted – has attempted to argue that the natural and probable causality requirement that the Supreme Court set forth in Aguilar should control this case. We would argue that, to the contrary, the natural and probable requirement only attaches once there are ongoing proceedings. And so that the nexus is not whether the Petitioner's actions would have a natural and probable effect on proceedings commenced sometime in the future. Rather, it would have to be whether the proceedings were actually already ongoing. I think that tees up the issue pretty well. Why don't we hear from the government? You've got some time to respond. That is the issue up or down, isn't it? That is precisely the issue, Your Honor. Why don't we hear from the government at this time, and then you'll have some time to respond if you like. Thank you very much, Your Honor. Thanks for coming in today. Ms. Winston. Thank you, Your Honor. A little warmer here than Washington? Much warmer. Good to have you here. What's the government's position on all of this? Our position, we did not read Espinoza that narrowly, Espinoza-Gonzalez. And there's – it's looking at the picture too narrowly to say that there's an ongoing judicial proceeding which is necessary to establish obstruction of justice. What do we know about the undocumented folks who were – that the Border Patrol had corralled? What do we know about them? Well, what we know about them is that they were illegal, and what we also know is that Mr. ---- I mean, do we know whether this was an initial first-time crossing for them, for the Poyos? We don't know whether it was a first-time crossing, but we do know that they had already been arrested, that they were in the custody of the Border Patrol, that Mr. Salazar opened up the back of the car and told them, vengace, which means come on, and had them come out of the car. He knew that they were illegal. Does the indictment or whatever we have in the records show where this happened? Was it at the border? You know, was it at a border station? Was it on the highway somewhere? I think it was on a highway somewhere. I don't think it was at a border station. But I believe that you would take a look. Let's see if I can see. Was there any judicial proceeding extant at the time? I suppose I'd have to answer that question by saying you have to step back, and under Aguilar and also under ---- I take it your answer is no, but. I don't ---- no, but. I don't feel that there has to be, because the way Aguilar, the Supreme Court in Aguilar defined obstruction of justice is that it prohibits an action which prohibits persons from obstructing or impeding the due administration of justice. Mr. Salazar derailed the process by inserting himself, by helping, aiding and abetting individuals who were in the lawful custody of the government to escape, to escape the lawful custody. But we have no idea, based on the record, what would likely happen with these individuals. It's a matter of technicality. It's correct, isn't it, that a first-time person entering the United States without permission, that's not a crime, is it? That's not a crime, but these individuals. So the normal procedure, if it's a first or second, sometimes even a third border crosser, it's simply catch and release, isn't it? Well, these individuals were detained, and they were ---- Well, they've been caught. But we don't know whether they would simply be dumped across the border, put on a plane to their home in Mexico or what, right? No, because Mr. Salazar inserted himself into the judicial proceeding, into the administration of justice. We do know that when people are detained, they will at some point, soon, soon, because of the Speedy Justice Act, be before a court at a hearing. But we don't know whether these individuals would be charged criminally or not. They were charged with a misdemeanor. These individuals were charged with a misdemeanor when they were in the custody of the Border Patrol. They had been charged with a misdemeanor. A Border Patrol agent has the authority to charge someone with a misdemeanor? Well, here the information ---- Can I have a yes or no to that? Yes. Well, I don't know if the Border Patrol actually did it. But on page 288, it says the Petitioner did aid, abet, counsel, command and encourage certain undocumented aliens who were lawfully arrested and in the custody of the U.S. Border Patrol agent for the misdemeanor offense of illegal entry to attempt to escape from custody in violation of 1816. Well, all that says is that was the basis of the arrest. I'm sorry? All that says is that was the basis of the arrest, suspicion of a misdemeanor. I think it was more than suspicion. I think they were arrested for the misdemeanor offense of illegal entry. Well, no, there was no adjudication that they had committed misdemeanor. Well, that's what you would have to have a judicial proceeding for. That's what I think. So at that point, it was just a suspicion. You know, maybe beyond ---- maybe there was reasonable cause, but it's certainly no, you know, there was no finding. Well, hopefully there were probable causes for the arrest. There's not even a charge pending, right? From the record, it doesn't look like there was a charge pending. Right. There's not a law. There's no charge pending, and they weren't convicted. So they were arrested on the basis of maybe cause to believe that they committed a misdemeanor, right? Right. As Judge Hawkins says, we don't know whether they would have been processed through the criminal justice system or not, right? They had to be processed through the criminal justice system. Why? You know, everybody who's suspected misdemeanor doesn't have to be charged. They could have been charged, you know, through the immigration system, right? Right. They could have been charged through the immigration system. Well, they don't have to be charged through the criminal justice system. But Mr. Salazar attempted to help them escape. They were lawfully in the custody of the U.S. Border Patrol. Oh, but escape from what? That's the question. Escape from the car where they were confined by the U.S. Border Patrol. No, no, no. Escape from what consequence? We don't know that. Escape from getting the due administration of justice. They were going to have the due administration of justice, and Mr. Salazar inserted himself in the process. What car was it? Sorry? You said they were in a car. Whose car? I can look back at my record. They were in the car of the U.S. Border Patrol. So, you know, if we look at the – Didn't you say they were in the back seat or in the trunk or where? It said that they opened up the back, that Mr. Salazar opened up the back of the trunk. They called it the tailgate of the car. So he opened the tailgate to let them out. An SUV-type vehicle then? I suppose. SUV-type or wagon possibly. But he opened the tailgate to let them out. Let's suppose that the panel disagrees with the government's position on whether this is an aggravated felony. What's your position on 240 relief? On 212c? 240. I take it the Petitioner has conceded that 212c doesn't apply, right? That's correct. Okay. What's your position on 240? I'm not sure. I know what you mean by 240. Well, is he eligible for cancellation of removal under Section 240 if this is not an aggravated felony? Well, the court would then have to remand the case, because under 240a, there's four elements, physical presence, good moral character. The government's position is that if the panel concludes this was not an aggravated felony, then it should remand to the board to determine whether the elements of 240 have been met. That's correct, Your Honor. But the government's position is that this crime of aiding and abetting an escape from lawful custody is an obstruction of justice. You've told us that in your brief, and I think you've now told us that four times. Is there anything else you'd like to add? Only to say that Mr. Salazar is also not eligible for waiver of inadmissibility because of his 2001 criminal offense, which occurred after the repeal of the 212C. That's not before us, is it? Yes, it is, Your Honor. It's before you, although it appears that the Petitioner has conceded the point. And since he preserved it for an en banc review, I thought I would raise it again. Okay. Thank you. Thanks for coming in today. Thank you. Rebuttal? Just a couple of very brief points. It is our position, Your Honor, that if this Court were to grant Mr. Salazar-Lujano's petition and determine that the 1987 conviction did not constitute an aggravated felony, then he would be eligible for cancellation. He has met the physical presence requirements. He has met the period of necessary lawful permanent residence. And it would then simply be a matter of the case. Isn't the government right, though, on that point, under Ventura, if we conclude it's not an aggravated felony, we should return it to the board to apply 240? That's entirely correct, Your Honor. That's entirely correct. Under Ventura and Thomas, remand would be required because there's not been an original adjudication of his cancellation. What's your response to the government argument that in any event he's not eligible because of a separate prior conviction? The separate convictions were not actually charged in the notice to appear. The notice to appear only charged his most recent 2001 offense for eating and abetting transport of a supposedly undocumented alien. The government never at any other time in the proceedings charged any of his prior offenses as being an aggravated felony or otherwise creating inadmissibility problems. And, of course, the government might be welcome to try to amend the notice to appear at a later point. But at present time, there's only the 2001 offense at issue. I just wanted to quickly comment on a couple of points that Ms. Winston raised. And I think it goes to much of your colloquy with her. There is no indication whatsoever in the record that any of the supposedly undocumented aliens who Mr. Salazar-Luviano was attempting to break out of custody, there's no indication that they were ever charged with anything. Now, the information does talk about their having on AR-288 talks about their potentially having been guilty of or having violated perhaps Section 1325, 8 U.S.C. 1325, which would criminalize the entry at a port of entry at an area other than a designated port of entry. But there's no indication in the record whatsoever that these aliens were ever placed into proceedings, that they were ever charged criminally, that they were ever placed into proceedings before an immigration court. As Your Honor alluded to. Well, that's pretty well established. That's pretty well established. Nobody claims that there was any court proceedings ongoing. The government doesn't claim that. I agree, Your Honor. I agree entirely. Let me see if there are any other points I can make. Well, I would like to point out that in this Court's recent decision in Renteria Morales, which is cited in my first 20HA letter, that this Court explicitly referenced a line of obstruction of justice cases under the U.S. Sentencing Guidelines, Section 3C1.1. I think we have that information, don't we? I think we do, Your Honor. Anything else? I don't think that there's anything else to add, Your Honor.  Thank you both for coming in and arguing today. The case just argued will be submitted for decision and will proceed to the United States v. Conchas. Is this the one where we only have the government counsel present? Would you wave or something at me if your opponent comes in? Yes, sir. Thank you very much. And we've got you at the bottom of the calendar. We've got you at the bottom of the calendar just to make sure he has an opportunity to come in. Thank you very much. We'll now proceed to the United States v. Contreras. Are counsel present on that? Yes, Your Honor. Okay. Please come forward.
judges: Hawkins, Tashima, Bright